**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GHP MANAGEMENT CORPORATION; et al., | No. 23-55013 |
| Plaintiffs-Appellants, | D.C. No. 2:21-cv-06311-DDP-JEM |
| v. | |
| CITY OF LOS ANGELES, | MEMORANDUM[*] |
| Defendant-Appellee, | |
| STRATEGIC ACTIONS FOR A JUST ECONOMY; et al., | |
| Intervenor-Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted April 11, 2024
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  SILER,[**] BEA, and IKUTA, Circuit Judges.

GHP Management Corp. and thirteen owners of Los Angeles apartment buildings (collectively, "Landlords") appeal the district court's dismissal of their Fifth Amendment Takings Clause claims challenging section 49.99 of the Los Angeles Municipal Code, the City's eviction moratorium enacted during the COVID-19 pandemic.  We have jurisdiction under 28 U.S.C. § 1291, and review de novo the grant of a motion to dismiss.  *Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022).

The City argues that the Landlords lack standing to bring this action because they did not allege that section 49.99 thwarted their eviction of the tenants, and a landlord suffers no injury unless a tenant successfully raises section 49.99 as a defense to an effort to evict.  We disagree.  To demonstrate standing, a plaintiff must show an "injury in fact," among other elements.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The City has prohibited landlords from evicting or endeavoring to evict a tenant for non-payment of rent "if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic."  L.A., Cal., Mun. Code § 49.99.2(A).  A landlord who complies with this legal requirement must

**        The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

forego rental payments that would otherwise be due under the lease. Each of the Landlords here has alleged either that some of its tenants "have taken advantage of the Eviction Moratorium to withhold payment of rent," or that it lost rent due to owning an apartment community in Los Angeles that is subject to the moratorium. These allegations of lost rent as a result of compliance with the City's applicable ordinances constitute an injury in fact; "[c]ertainly the Supreme Court has been satisfied by less." *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894, 898 (9th Cir. 2011); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (holding that a complaint's prayer for "damages for the temporary taking" of property was sufficient to allege injury in fact at the pleading stage).

The Landlords failed to state a claim for a Fifth Amendment per se physical taking. Under the Supreme Court's current jurisprudence, a statute that merely adjusts the existing relationship between landlord and tenant, including adjusting rental amount, terms of eviction, and even the identity of the tenant, does not effect a taking. *See Yee v. City of Escondido*, 503 U.S. 519, 527–28 (1992); *see also FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("[S]tatutes regulating the economic relations of landlords and tenants are not *per se* takings."). "The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land" by a third party. *Yee*, 503 U.S. at

3

527.  The Supreme Court has made an "unambiguous distinction between a commercial lessee and an interloper with a government license." *Fla. Power*, 480 U.S. at 252–53; *cf. Cedar Point Nursery v. Hassid*, 594 U.S. 139, 152 (2021) (explaining that "government-authorized invasions of property . . . are physical takings").[1]  And the Court may consider whether a statute effected a taking "were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy."  *Yee*, 503 U.S. at 528.  Here section 49.99 does not effect a physical taking because the Landlords voluntarily opened their property to occupation by tenants.[2]  Moreover, section 49.99 did not compel landlords to rent property in perpetuity, but rather allowed

---

[1]Therefore *Horne v. Department of Agriculture*, relied on by the Landlords, is not on point, because it involved a third party (the government) taking property, rather than an adjustment of voluntary relations between a landlord and a tenant. 576 U.S. 350, 365 (2015).

[2]Because we are bound by *Yee,* we decline to follow *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022), which ruled that an eviction ordinance that prohibited the nonrenewal or termination of a lease absent specified circumstances constituted a per se physical taking.  In reaching this conclusion, *Heights Apartments* distinguished *Yee* on the ground that the ordinance in that case did not deprive landlords of their right to evict.  *Id.* at 733.  But as explained by Judge Colloton, *see Heights Apartments, LLC v. Walz*, 39 F.4th 479, 480 (8th Cir. 2022) (Colloton, J., dissenting from denial of rehearing en banc), the ordinance in *Yee* did preclude landlords from evicting their present tenants, as well as their tenants' successors in interest, for most reasons, and yet "did not effect a *per se* taking."

landlords to evict their previously invited tenants for reasons not otherwise prohibited.[3]

The Landlords also failed to state a claim for a Fifth Amendment regulatory taking. Here the Landlords failed to allege the diminution in property values they suffered as a result of the eviction moratorium, and alleged only the amount of rent lost. "But the mere loss of some income because of regulation does not itself establish a taking." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). Instead, "economic impact is determined by comparing the total value of the affected property before and after the government action." *Id.; see also Murr v. Wisconsin*, 582 U.S. 383, 395 (2017) ("[O]ur test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property.") (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)). Although *Colony Cove* considered the economic impact of an alleged taking after a jury trial, its formula for determining economic impact is binding at all stages of the litigation process. 888 F.3d at 451. While such diminution in value need not be shown where a statute completely

---

[3] The Landlords' reliance on *Alabama Association of Realtors v. Department of Health and Human Services*, 594 U.S. 758 (2021) (per curiam), is misplaced, because that case held only that the Centers for Disease Control and Prevention lacked the authority to pass an eviction moratorium, and did not address a per se physical takings claim. *Id.* at 763–65.

abolishes "both the descent and devise of a particular class of property," *Hodel v. Irving*, 481 U.S. 704, 717 (1987), such unusual circumstances are not present here.

Because we affirm the grant of the motion to dismiss, the question whether the district court erred in granting the motion of the Alliance of Californians for Community Empowerment Action, Strategic Actions for a Just Economy, and Coalition for Economic Survival to intervene is moot. *See Prete v. Bradbury*, 438 F.3d 949, 959–60 (9th Cir. 2006).

**AFFIRMED.**[4]

---

[4] The motion for judicial notice, at Dkt. 9, is granted. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); Fed. R. Evid. 201(b). The motion to file an amicus brief in support of the City, Dkt. 29, is denied as moot. The motion to file an amicus brief, Dkt. 52, is denied as untimely. Fed. R. App. P. 29(a)(6).